THE PECK-WILLIAMSON HEATING AND VENTILATING COMPANY v. THE BOARD OF EDUCATION OF THE CITY OF OKLAHOMA CITY.

(Filed July 30, 1897.)

The plaintiff in error, by its president, George Peck, and its secretary, A. W. Williamson, proposed to construct school buildings at an estimated cost of $70,000, and by the authority of the people of Oklahoma City to be obtained afterward, to issue bonds for that sum of money. Upon January 8, 1894, the plaintiff entered into a contract with the defendant, by which it agreed to furnish to the defendant, warming, ventilating and dry closet apparatus for thirty-two or more school rooms, divided into such school buildings as the board of education might choose, to be erected in the year 1894. Afterward, and the same day Peck and Williamson, as individuals, and the plaintiff corporation, made another and separate contract with the defendant for the purchase of the $70,000 of bonds, which provided that Peck, Williamson and the plaintiff corporation, should receive a commission of four per cent. upon the entire $70,000 of bonds. Upon an injunction afterward sued out in the district court of Oklahoma county, to restrain the board of education from issuing $70,000 in bonds, the district court "found" the last assessment of property in the school district of Oklahoma City to be $1,916,000; that four per cent upon this amount was $76,640; that the existing indebtedness was $30,133, and that only $43,640 in bonds could be lawfully issued. Upon June 25, 1894, the defendant had remitted upon the total commission of four per cent. upon $70,000 worth of bonds the sum of $2,680.50. The erection of the school buildings upon the part of the defendant and the supplying of the heating and ventilating apparatus by the plaintiff was begun and continued during the summer of 1894. Bonds to the amount of $45,500 had been placed in bank in Oklahoma City to become an indebtedness upon the city as they were issued to the purchasers. The last delivery of them to Peck and Williamson amounted to $11,000 made upon November 17, 1894. Upon this state of facts a controversy arose between the plaintiff and defendant as to the payment of a claim on account of needless delay; that the defendant refused to pay the sums of $430 each claimed by the plaintiff to be due

for placing apparatus agreed upon into the two buildings. The plaintiff claimed respectively the sum of $430 balance due for, placing the apparatus in one of the buildings constructed, known as the North building, and a like amount for placing the apparatus in the building known as the South building; a claim for $100 occasioned by delay. Other claims were made, but not argued in the briefs and, as appears from the record, abandoned. The defendant answered that it had paid all claims due to the plaintiff; that the debts of the school district existing at the time of making the contract sued on should be added to the debts which the board of education was proposing to incur in the issuance of bonds and construction of buildings and that the total indebtedness would exceed the limit of four per cent. imposed by the federal statute of 1886, upon the last assessed valuation of the school district; that it had paid divers sums which had been accepted in satisfaction of all sums legally due.

1. BOARD OF EDUCATION—*Indebtedness—Limitation of.* Upon the contention that the obligations incurred in the contract with the plaintiff, taken in connection with the obligations which the board of education of the city of Oklahoma City "proposed" to incur in the issuance of bonds and construction of buildings, would exceed the limit of four per cent. of the last assessed valuation of the property of the school district of Oklahoma City, it is *held,* that the plaintiff's demurrer to this defense should have been sustained. It cannot be contended that the contract was invalid as beyond the four per cent. limit of the federal statute because the board of education "proposed" thereafter to incur other and additional indebtedness in which the plaintiff was not a party, and that such indebtedness, when so incurred, would exceed the four per cent limit of the federal statute.

2. PRIVATE CORPORATION—*Contract—Limitation of Authority to Make.* The plaintiff was a corporation chartered for "the purpose of manufacturing and selling heating and ventilating apparatus," and for no other purpose, and had no power by its officers to become a negotiator or broker of bonds upon commission. The charter of the plaintiff was full and sufficient notice to the defendant of the limitations of the plaintiff's authority in that respect.

3. CONTRACT—*Off Set.* The excess of $860 paid by the defendant corporation as "commission upon bonds" in excess of the amount of commissions due for any bonds ever sold by Messrs. Peck and Williamson could not have been an off-set as against the amount due the plaintiff company in this action, without the consent of Messrs. Peck and Williamson.

4. SAME—*Settlement.* But, in as much as a settlement has been agreed to and a balance ascertained and struck between the plaintiff and the defendant company, acting by its president, Mr. Peck, which settlement included a charge against Messrs. Peck

and Williamson of the sum of $860 paid to them upon commissions in excess of the amount due to them upon bonds of the defendant sold by them, and which sum of $860 was accepted by Mr. Peck as payment due to the plaintiff company, and in as much as he was acting at the time—both as president of the plaintiff corporation and in behalf of himself and Williamson, who was jointly interested with him in the contract whereby they were to receive and did receive the said commission of $860 in excess of the amount due for bonds sold, we think that the court below, who tried the case without the intervention of a jury, was correct in refusing to allow to the plaintiff corporation recovery for such sum of $860, the adjustment, except as to the amount of $75 found by the district court to be due the plaintiff, having by such settlement been agreed to by all the parties interested.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before Henry W. Scott, District Judge.*

*H. H. Howard,* for plaintiff in error.

*J. W. Johnson,* for defendant in error.

STATEMENT OF FACTS.

In the early part of the year 1893 the defendant in error, the board of education of the City of Oklahoma City, proposing to construct school buildings and to purchase building sites therefor at an estimated cost of $70,000, submitted to the people of Oklahoma City a proposition for authority to issue bonds of the school district in that amount for that purpose. The proposition was carried at the election called for that purpose. The bonds remained unsold until January 8, 1894, at which time the contract sued on in this case was made. Upon that date, the plaintiff in error, the plaintiff below, and the defendant, defendant in error here, entered into the contract sued on, which recites that the plaintiff corporation agreed to furnish to the defendant warming, ventilating and dry

closet apparatus for thirty-two or more school rooms, divided into such school buildings as the board of education might choose, and to be erected during the year 1894. In setting out the plans and specifications of the apparatus, the price was fixed at so much per room, and apportionate payments were to be made during the progress of the work, and a final payment of twenty per cent. to be made when the work was completed.

It was provided that in case the plaintiff was called to work upon the buildings or to inspect them, and they were not in a condition for the work to be done, or if it was needlessly delayed, the defendant to have reasonable damages, and in case any sum was not paid when due it should draw interest and the defendant should pay the costs of collection.

Afterward, on the same day, George Peck and A. W. Williamson, as individuals, and the plaintiff corporation, made another and separate contract with the defendant for the purchase of the $70,000 of bonds.

This contract provided that the defendant was to secure a record to be made in the district court that the bonds were valid, and was to have the bonds printed through the agency of the purchasers, the purchasers reserving the right to pay the whole sum and receive the entire $70,000 at any time and to be allowed a commission of four per cent out of the first bonds delivered.

Thereafter an action was brought in the district court to restrain the board of education of the city of Oklahoma City from issuing $70,000 in bonds, upon the ground that when this sum was paid out of the existing indebtedness, the debts of the school district would be in excess of the four per cent. of the assessed valuation of the property of

the preceding year, in violation of the act of congress of 1896, prohibiting such a contract. Upon the hearing of the injunction the district court found the last assessment to be $1,916,000; that four per cent. upon this sum was $76,640; that the existing indebtedness was $30,133.19, and that only $45,640 in bonds could be lawfully issued.

Thereupon the defendant applied to the plaintiff for a modification of the contract, which was refused, the plaintiff declaring that it proposed to stand upon its rights under the original contract. Thereupon the parties entered upon the performance of both contracts, and the defendant proceeded to remit the bonds contracted for to the plaintiff, with directions to sell, and agreed to the four per cent. commission thereupon. Upon June 25, 1894, the defendant had remitted upon the total commission of four per cent. upon sales of bonds, the sum of $2,680.50. Contracts were let for the construction of two school houses to contain sixteen rooms and the discussion of location, plans, etc., for other buildings continued, and in August the site for a high school was selected by the board of education, and the plaintiff notified of the fact, and also of the fact that the military reservation consisting of 160 acres, adjacent to the city of Oklahoma City had, by an act of congress passed August 8, 1894, been donated to the city. (28 U. S. Statutes, 264.)

By that act certain portions of the reservation became immediately subject to sale for the use of the school district, and upon the 24th of October, the plaintiff was notified by the defendant in error "to forthwith set said warming, ventilating and dry closet apparatus and put the same into said buildings as per your contract with

said board of education." Under the decree of the court the issuing of $70,000 worth of bonds was restrained, the isuing of $45,500 was authorized. The contract as originally made was not executed. Two school houses were constructed in lieu of four school houses containing thirty-two rooms, as originally contemplated, and provided for in the contract. These bonds to the amount of $45,500 had been placed in bank in Oklahoma City to become an indebtedness upon the city as they were issued to the purchasers. The last delivery of them, amounting to $11,000 was made upon November 17, 1894.

Upon this state of facts a controversy arose between the plaintiff and defendant upon three points: (1) the payment of a claim of plaintiff on account of needless delay; (2) and that the defendant refused to pay the sums of $430 each claimed by the plaintiff to be due respectively for placing the apparatus agreed upon in the two buildings, which had been constructed; and (3) when the fact that the other sixteen rooms had not been constructed and no effort was made to construct them was called to the attention of the board of education, and tender of performance of the contract requested of the defendant that it took no action in the matter.

On January 4, 1895, the plaintiff filed its suit, setting up five cases of action: First, a claim of $430, balance due for placing apparatus in one of the buildings constructed, known as the North building; second, a claim of $430, balance due for placing apparatus in the other building constructed, known as the South building; third, a claim for damages for breach of contract in failing and refusing to construct the other rooms provided for by the contract. The measure of damages was claimed to be the difference

between the cost of performance and the contract price, which, by the evidence, is shown to be $3,000; fourth, a claim of $100, for damages occasioned by delay. This is an item arising in November and December, after the agreement to settle a similar item for $75 for the payment of which the money was placed in the bank, but afterwards the defendant refused to allow it to be paid over. When this refusal was made, this part of the petition was amended to cover both items, claimed to amount to $318; and, fifth, a claim for the expenses of collécting, provided for by the contract, and fixed at $500.

A demurrer to the petition was overruled, and leave given to answer.

March 14, 1895, the defendant answered, pleading, first, that it was not indebted to plaintiff; second, that it had paid the claim; and third, that when the debts of the school district existing at the time of making the contract sued upon should be added to the debts the board of education was proposing to incur in the issue of bonds and construction of buildings the total debt would exceed the limit of four per cent of the assessed valuation.

To this answer the plaintiff filed a general demurrer, directed particularly at the third defense, and which was as to the said third defense sustained.

On September 23, 1895, the defendant filed an amended answer, which sets up first, that it is not indebted to the plaintiff as alleged; second, that it has paid divers sums which have been accepted in satisfaction of all sums legally due; third, that adding what the board of education is proposing to contract to expend what the school district already owes, the indebtedness would become excessive; and fourth, that the school board had elected to

buy sites and build houses to cost $70,000, and had no money for that purpose, but the people had voted bonds in that sum; that plaintiff knew this; that to induce the defendant to make the contract sued on, George Peck and A. W. Williamson and the plaintiff contracted to buy the bonds; and that aferwards the defendant was enjoined from issuing the $70,000 of bonds, and permitted to issue only $45,640, and the plaintiff had notice of the fact; that the plaintiff had lithographed the $70,000 bonds which defendant, at suggestion of plaintiff, destroyed; that the plaintiff then had printed the $45,500, according to the decree; that defendant notified plaintiff it could not furnish the $70,000 in bonds and could not erect the thirty-two rooms; that afterwards the defendant did furnish the $45,500 in bonds which plaintiff accepted and placed its apparatus in the rooms constructed at the contract price; that defendant was prevented by the order of the court from issuing the $70,000 in bonds and constructing the thirty-two rooms; and that by accepting the $45,500 in bonds and furnishing the apparatus in the rooms constructed "the plaintiff consented to the new conditions as imposed by the order and decree of the court, waived its void supposed contract herein declared upon, and is estopped to claim the fulfillment of the said contract of purchase of said bonds or of said contract as to furnishing apparatus for thirty-two or more rooms in the said supposed contract mentioned."

To this amended answer the plaintiff filed a general demurrer, which was overruled.

On December 18, 1895, the plaintiff replied, first, denying generally, and denying specifically that the defendant had paid the several sums in full satisfaction of the

claims of plaintiff; and alleging that defendant had full authority to make the contract sued upon, and that the indebtedness thereby incurred, together with that existing was less than four per cent of the assessed valuation, and alleging that under the contract sued on defendant was to erect such number and character of buildings as it might choose, divided into not less than thirty-two rooms, that plaintiff is not a beneficial party to the bond contract, of which defendant had notice, and received and paid for no bonds or the purchase price thereof and was entitled to no profit and subject to no loss arising from the bond purchase; admitting that the lesser number of bonds were issued and delivered to George Peck and A. W. Williamson, denying that lithographing was ordered and paid for by plaintiff; denying that plaintiff was ever notified that defendant would not or could not construct the thirty-two school rooms contracted for; alleging that the contract extended to the last of the year 1894, and the payments were due only as the work was done, and long before the time expired the defendant had means and property with which to keep the terms of the contract without incurring further indebtedness, and was without any lawful excuse for refusing to keep the contract; denying that plaintiff consented to the alteration or recission of the contract sued on or waived any rights thereunder, or is in any manner estopped from claiming a fulfillment of its terms.

December 26, 1895, the parties stipulated in writing that a jury be waived and the cause tried by the court; that either party may submit to the court questions for special findings of fact, subject to the same rules upon which such questions might be submitted to a jury, and that the

court should answer as a jury would be required to do, and that the special findings so made should have the same relation to the general conclusions of the court as a special to a general verdict. To this the court assented in writing.

Upon these pleadings and this stipulation the case went to trial before the court on January 6, 1896. After the evidence was submitted, the plaintiff, in accordance with the stipulation, requested findings, and the court found specially, as follows:

"Question 1. Has the defendant ever paid the balance of $430 claimed by plaintiff in the first cause of action, and if so, when and to whom? Answer. Yes, by payment to Peck and Williamson, who are shown to have been joint purchasers with the plaintiff of the bonds issued by the defendant.

"Q. 2. Has the defendant ever paid the balance of $430, claimed by the plaintiff in the second cause of action, and if so, when and to whom? A. Yes, by payment to Peck and Williamson, who are shown to have been joint purchasers with the plaintiff of the bonds issued by defendant.

"Q. 3. Has the contract sued on ever been rescinded, altered or modified; if so, when, how and to what extent? A. This question is held to be incompetent, and immaterial under the issues in this case and in view of the evidence.

"Q. 4. Has either party heretofore failed or refused to keep the terms of the contract sued on, or violated the terms of the contract; if so, which party and in what? A. Neither party has failed or refused to keep the terms of the contract. Defendant has executed its contract, except in so far as inhibited by the law.

"Q. 5. What was the loss to plaintiff on account of the failure to carry out the terms of the contract sued on? A. This question is held to be incompetent.

"Q. 6. What would have been the expense to the plaintiff to place its apparatus in sixteen rooms had they been constructed according to the contract, and what would it have been entitled to receive therefore? A. This question is held to be incompetent.

"Q. 7. What was the assessed valuation of the property in the Oklahoma City school district for the year 1893? A. One million, eight hundred and fifty-five thousand, eight hundred and forty-nine dollars.

"Q. 8. What was the indebtedness of said school district on January 8, 1894, before the contract sued on was made and how much was the indebtedness increased by the making of said contract? A. The indebtedness of said school district on January 8, 1894, was thirty-two thousand to thirty-three thousand dollars. The remaining clause of said question is held to be incompetent.

"Q. 9. Upon any day when any sum became due under the contract sued on, adding such sum falling due to the existing indebtedness of the district, did it make such indebtedness exceed four per cent. of the assessed valuation of 1893? A. This question is held to be incompetent and immaterial.

"Q. 10. Was the cost and character of the school houses into which the plaintiff was to place its apparatus agreed to or understood as a part of the contract; if so, what was to be the cost, character and number of such houses? A. As answer to the first clause of said question: Yes, the cost and character of the school houses were discussed by the plaintiff and defendant at the time of the making of said contract. The second clause of said question, as put, is immaterial, except as to the cost, which the evidence shows would have exceeded the legal limitation of indebtedness of said school district.

"Q. 11. Are the two contracts, the one sued upon and the one sent up by the amended answer, between the same parties, or related to the same subject matter? A. Plaintiff and defendant were both parties to both of

those contracts, and both contracts must be construed together in order to find the effect and meaning and proper interpretation of said contracts.

"Q. 12. What interest had the plaintiff in the contract for the purchase of the bonds, and what part of the commission did it or was it to receive? A. The amount of interest that the plaintiff had in the contract for the purchase of the bonds and the commission it was to receive are held to be immaterial."

As a general conclusion the court found that the plaintiff was entitled to recover $75, which represents the sum the plaintiff, by compromise, agreed to accept on account of delay in the early part of the work.

The plaintiff moved for judgment, for the reason that the special findings are inconsistent with the general conclusion, a motion authorized specially by the stipulation already mentioned. This motion was denied.

The plaintiff then filed its motion for a new trial, setting forth numerous grounds. This was denied.

The court rendered judgment for $75 and costs in favor of the plaintiff.

Opinion of the court by

McAtee, J.: Upon the various assignments of error it is contended, in the first place, that the plaintiff was damaged by the neglect and refusal of the defendant to comply with its contract of June 8, 1894. The evidence shows that the difference between the cost of performance and the contract price was the sum of three thousand dollars. The defense to this claim was that the laws of the United States, sec. 4, chapter 818, enacted July 30, 1886, being "An Act to Prohibit the Passage of Local or Special

Laws in the Territories of the United States, to Limit the Territorial Indebtedness, and for Other Purposes," provided that:

"Sec. 4. That no political or municipal corporation, county, or other subdivision in any of the territories of the United States shall ever become indebted in any manner or for any purpose to any amount in the aggregate, including the existing indebtedness, exceeding four per centum of the value of the taxable property within said corporation, county or subdivision, to be ascertained by the last assessment for territorial and county taxes, previous to the incurring of such indebtedness; and all bonds or obligations in excess of such amount given by such corporation shall be void."

The evidence in the case shows that at the time of the making of this contract, the last assessment upon property within the school district amounted to $1,916,000; that four per cent. thereon amounted to $76,640; and that the existing indebtedness was $30,133.19; and that only $45,640 in bonds could be lawfully issued under the limitation of four per cent. The decree of the district court in the injunction suit had so especially declared, and had refused to sanction or to issue $70,000 in bonds which had theretofore been voted by the people of the school district and which had been printed. The board of education was authorized under the law to incur a liability in behalf of the school district which represented, not exceeding the sum of $45,640.

Upon that date, June 8, 1894, the contract was made with the plaintiff company whereby the plaintiff in writing agreed to furnish to the board of education of the City of Oklahoma "warming, ventilating and dry closet apparatus for thirty-two or more school rooms, divided

into school buildings of such size as the board may choose and to be erected during the year 1894, as shown by the plans; materials to be furnished, and labor to be performed, more particularly described as follows:"

The defendant thereupon "agreed to pay to party of the first part the sum of $210 for each school room for heating and ventilating apparatus complete; and $450 for dry closets, etc., complete, in a four-room school; $520 for dry closets, etc., in an eight-room school; $840 for dry closets, etc., complete, in a ten or twelve-room high school."

The issue of bonds to the extent of $45,500 had been provided for as early as June, 1894, and yet as late as October 24, 1894, the defendant notified the plaintiff to "set said apparatus, to-wit, your warming, ventilating and dry closet apparatus, and put the same into the said buildings as per your contract with said board of education bearing date of the 8th day of January, 1894," thereby still standing upon the rights provided and stipulated for the defendant by the contract of that date. While thus standing upon all its legal rights under the contract, the defendant itself failed to keep its contract and provided the buildings requiring apparatus for sixteen rooms only. This apparatus was furnished by the plaintiff in compliance with its contract. A settlement made after the completion of its work upon the sixteen rooms between the plaintiff and defendant shows that the amount due to the plaintiff for placing its apparatus in those sixteen rooms amounted to $4,400. According to the provisions of the contract of June 8, 1894, the amount of indebtedness stipulated by the defendant to be incurred under its contract then made with the plaintiff

would not have exceeded the sum of $8,800, but the defendant had at the time of the execution of that contract, a right to incur an indebtedness to the extent of $45,640 within the limitations imposed by the federal statute, and that statute cannot, therefore, be availed of as a defense to the rights stipulated for in behalf of the plaintiff, and claimed in this action.

It is contended by the defendant in its answer of March 14, 1895, that the obligations incurred in the contract with the plaintiff taken in connection with the obligations which the Board of Education of the city of Oklahoma City "proposed" to incur in the issuance of bonds and construction of · buildings, the total indebtedness thereby incurred against it would exceed the limit of four per cent. of the assessed valuation of the property of Oklahoma City. The plaintiff corporation suing here was not a party to a contract stipulating to incur liability upon the board of education, of an indebtedness exceeding four per cent. upon the last annual assessment upon its school district. We think the plaintiff's demurrer to this defense should have been sustained. The defendant had entered into a contract by which the plaintiff was bound, and its proposition cannot be sustained that, because it proposed thereafter to incur other and additional indebtedness to which the plaintiff was not a party, and that such other, later, and additional indebtedness would amount to a sum exceeding the four per cent. limit of the federal statute, that therefore its contract with the plaintiff was void. We think the court erred in this ruling, and that the demurrer should have been sustained.

It is, however, contended by the defendant that the plaintiff "abandoned" its original contract when it agreed

to negotiate the bonds issued within the limit of $45,500, and accepted payment for sixteen rooms for which the defendant permitted it to furnish supplies under the contract, instead of the thirty-two rooms which had been provided for by the contract and for which the plaintiff was bound.

The contract between the parties was in writing and it is expressly provided by sec. 870, p. 221, of the Statutes of Oklahoma, 1893, that: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

It is not pretended that there was any recission by written contract, nor is there any evidence to support the contention that the contract in writing was altered by an "executed oral agreement," except that which was furnished by the acceptance by the plaintiff of payment, so far as payments have been made, for the performance of one-half of its contract.

It was, indeed, shown by the defendant upon the testimony of the secretary and treasurer of the company that at the time of making the settlement heretofore referred to after the completion of the work which was actually done, that the president of the company, Mr. Peck, said that he "didn't want us to understand that the matter was finally settled if we should build the other rooms," and that the settlement at that time was "in payment for everything that was delivered to the school board up to that date," and that Mr. Peck, the president of the plaintiff corporation "didn't exactly regard it as a final settlement, he agreed to the settlement up to that time. He expected to furnish apparatus and other supplies for other buildings that might be built."

There is in this testimony no recission of the contract under the provisions of the statute and no "executed oral agreement," except so far as above stated. The under-standing of the plaintiff company by its president as ex-pressed at the time of the settlement referred to having plainly been that under the provisions of his contract he was to be permitted to furnish apparatus for other build-ings subsequently erected by the defendant.

Upon the contention of the plaintiff that the sum of $430 was due for the placing of apparatus in one of the buildings constructed, known as the North building, and that a balance for $430 for placing apparatus in the building known as the South building, which was found by the court as to each of these claims that the plaintiff had been paid, "by the payment to Peck and Williamson, who are shown to have been joint purchasers with the plaintiff of the bonds issued by the defendant," it is disclosed in the record that the "proposition and contract for the purchase of school bonds was made be-tween George Peck and A. W. Williamson, as individ-uals, and the Bennett and Peck Heating and Ventilating company, a corporation organized under the laws of Ohio, by its president and secretary, all as party of the first part, whereby they propose to purchase of the board of education of the school district of the city of Oklahoma City, party of the second part, $70,000 in bonds," etc.; that by said contract the party of the first part was "to be allowed a commission of four per cent. on the whole amount, payable in bonds along with the first delivery of bonds," and that on or by June 25, 1894, out of the total sum of $2,800 which would have been the amount of com-mission upon $70,000 at the rate of four per cent. the sum

of $2,680.50 had been paid; that in the first instance a portion of this latter amount of commissions had been remitted to the plaintiff corporation. It was also in evidence, and undisputed, that the plaintiff corporation had refused to receive the remittance and that immediately thereafter the amount of the remittance thus refused had been made by Mr. Avey, the secretary of the defendant board of education, directly to Messrs. Peck and Williamson, as individuals, and that they had appropriated the money and had not paid any portion of it to the plaintiff corporation. It was in evidence, and undisputed, that the plaintiff corporation was incorporated for the purpose of "manufacturing and selling heating and ventilating apparatus;" and that the plaintiff corporation had never in any manner authorized the making of the said contract, but on the contrary, had repudiated it and taken no part in it. It is true that Messrs. Peck and Williamson were the officers of the corporation, but a corporation which has been chartered "for the purpose of manufacturing and selling heating and ventilating apparatus," and for no other purpose, had no authority to undertake to become a negotiator or broker of bonds upon a commission, and in dealing with the corporation the board of education must be held to have been charged with notice of the contents of the charter of the corporation with which it was dealing.

It is further contended by the defendant that Messrs. Peck and Williamson were entitled to no more than four per cent. upon the amount of bonds, $45,500, which they actually purchased and sold for the defendant company, to-wit, $1,820, and that the difference between the latter sum and the sum $2,680.50, which the board of education

had remitted by way of commissions to Messrs. Peck and
Williamson, should have been credited to the defendant
corporation and that the balance, $860, should be appro-
priated by the order of the court as an off-set to the
claims respectively upon the two balances of $430 each.
The contract for the purchase of the bonds was, as to the
plaintiff corporation, *ultra vires*, and if Messrs. Peck and
Williamson were over paid by a mistake of the defend-
ant company such over-payment cannot be credited to the
defendant corporation, the board of education, as against
the amounts here referred to admitted upon the plead-
ings and in the evidence to have been actually due under
the first contract for services rendered by the plaintiff
corporation. While Messrs. Peck and Williamson were
the officers of the company and undertook to use the
name of the plaintiff corporation as one of the parties to
the contract for the purchase of bonds, they had no power
to bind the plaintiff corporation and the limitations of
their authority was expressly contained in that provision
of its charter which specifies the purpose of its being, and
imposed limitations within which its officers, when at all
authorized to act, should undertake to bind it, and we
cannot agree with the conclusion of the district court
that the amount of the over payment referred to could be
applied as an off-set against the amount due to the plain-
tiff corporation upon the contract. (*N. Y. Ice Co, v.
Parker*, 8 Bos. 688; 21 How. Prac. Rep. 302; *Marginthan v.
King*, 24 Pac. 1049, [Col.;] *Robberts v. Donovan*, 9 Pac.
Rep. 180.)

It is expressly provided by sec. 3973, p. 779, Statutes of
Oklahoma, 1893, that:

"A counter-claim must be one existing in favor of de-

fendant and against a plaintiff between whom a several judgment might be had in the action and arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action."

And even if the plaintiff corporation had been bound by the contract for the purchase of bonds and had been a party to the receipt of the amount of $860 claimed to have been unearned commisions, yet such unearned commissions could not have been made the subject of a counter-claim or set-off in an action between the plaintiff corporation and the defendant corporation, to which Messrs. Peck and Williamson are not parties.

But it is claimed that after the apparatus was furnished for the sixteen rooms and the work completed and the $45,500 of bonds had been purchased and sold by the plaintiff corporation, that a settlement had been made between the defendant corporation and the plaintiff corporation acting through its president, Mr. Peck.

The testimony of Mr. Avey, the secretary of the defendant corporation, upon this subject, is that such a settlement was made of which a transcript is furnished and included in the record, and that while Mr. Peck "didn't exactly regard it as a final settlement," yet, he "agreed to the settlement up to that time," and that "he—Mr. Avey—had accepted Mr. Peck's own statements in his letters as to the amount of commissions which was due upon the bonds," and that Mr. Peck had "stated that so much was due for commissions on the bonds and so much for heating apparatus. I took him at his word and just simply sent the amount he asked for and did not discover the mistake until that letter was written;" that he had

afterward corrected the mistake in the books of the board of education and that this correction by which he had erroneously credited Mesrs. Peck and Williamson with the sum of $860 excess paid to them as commissions and had charged the sum to the account of the plaintiff corporation upon its heating apparatus, thus showing that the correct amounts of the commissions at four per cent. upon $45,500 on bonds purchased, to-wit, $1,820, had been paid to Messrs. Peck and Williamson, and that the two balances of $430 each due to the plaintiff corporation for the apparatus furnished in the North and South buildings had thus been paid and discharged by the excess of $860 which was charged by the settlement then made against Peck and Williamson, and that "this was accepted in the settlement" and was considered "by him as a settlement in that respect" and was "agreed to by him." This testimony was confirmed by Mr. Wheeler, the treasurer of the defendant board of education, who testified that the settlement above referred to included the transaction concerning the over payment of $860 to Messrs. Peck and Williamson and the charging back of the said sum to the plaintiff corporation was "in payment for everything they had delivered to the school board up to that date."

This testimony is uncontradicted. It is an "executed oral agreement" and, as Mr. Peck was acting at the t'me for both himself, as an individual, and as president and agent of the plaintiff corporation, he had the power to make the remittance in the one case on behalf of Mr. Williamson and himself, with whom he was a joint partner in the contract for the negotiation of the bonds, and

to admit as against the plaintiff corporation the charging of $860 which had been erroneously paid to himself, for himself and Mr. Williamson.

And while we differ, therefore, somewhat from the district court as to the grounds of its decision in the case, we think that its judgment should be affirmed for the reasons here expressed.

All the Justices concurring except Keaton, J., who concurs in the conclusion reached but not in all the reasoning in support thereof.